# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:25-cv-20538/MARTINEZ

POTAMKIN HY PALMETTO, LLC
d/b/a KENDALL HYUNDAI,

     Plaintiff,

v.

HYUNDAI MOTOR AMERICA
CORPORATION,

     Defendant.

_____/

POTAMKIN HY PALMETTO, LLC
d/b/a KENDALL HYUNDAI,

     Plaintiff,

vs.

GENESIS MOTOR AMERICA, LLC,

     Defendant.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................4

I.       Plaintiff Voluntarily Released "All Claims" Relating to its Hyundai and Genesis
         Dealerships...............................................................................................................5

II.      No Exception Preserves Plaintiff's Complimentary Maintenance Claims. ........................6

         A.       Plaintiff's Claims Relate to Complimentary Maintenance, Not Warranty
                  Service.......................................................................................................... 7

         B.       Section 2(a)'s Exception Does not Extend to Claims Regarding
                  Maintenance Programs.............................................................................. 8

         C.       Plaintiff's Allegations of Extrinsic Evidence Post-Execution Are
                  Irrelevant. .................................................................................................. 10

CONCLUSION.....................................................................................................................11

CERTIFICATE OF SERVICE .............................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................................4

*Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC,*
   278 So.3d 857 (Fla. 3d DCA 2019) ........................................................................................9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................................4

*Bulford v. Verizon Bus. Network Servs., Inc.,*
   564 F. App'x 449 (11th Cir. 2014) ........................................................................................4

*Contragolpe LLC v. 505 NE 30 Street, LLC.*
   403 So.3d 358 (Fla. 3d DCA 2025) ......................................................................................11

*Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.,*
   673 F.2d 1234 (11th Cir. 1982), *opinion modified on reh'g sub nom.,*
   680 F.2d 105 (11th Cir. 1982) ................................................................................................5

*Crosby v. HLC Properties, Ltd.,*
   223 Cal. App. 4th 597 (Cal. Ct. App. 2014) ..........................................................................8

*Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.,*
   556 F.3d 1232 (11th Cir. 2009) ...........................................................................................10

*Flores v. Barr,*
   934 F.3d 910 (9th Cir. 2019) ...............................................................................................10

*Johnson v. City of Atlanta,*
   107 F.4th 1292 (11th Cir. 2024) ............................................................................................3

*Love & War, LLC v. Wild Bunch A.G.,*
   2020 WL 3213831 (C.D. Cal. Mar. 19, 2020) .......................................................................9

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) .............................................................................................4, 5

*Pettway v. Amazon Fulfillment Ctr.,*
   2024 WL 5090194, at *3 (M.D. Fla. Dec. 12, 2024) .............................................................8

*Roberts v. Sarros,*
   920 So. 2d 193 (Fla. 2d DCA 2006) ....................................................................................10

*Seoul Semiconductor Co., Ltd. v. Finelite, Inc.,*
   694 F. Supp. 3d 1199 (N.D. Cal. 2023) .................................................................................9

*Skrbina v. Fleming Cos.*,
　45 Cal. App. 4th 1353 (Cal. Ct. App. 1996) ...........................................................5

*In re Tobacco Cases I*,
　186 Cal. App. 4th 42 (Cal. Ct. App. 2010) ....................................................10, 11

*United States v. Miles*,
　75 F.4th 1213 (11th Cir. 2023) .....................................................................7, 8

*VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*
　100 Cal. App. 5th 287 (Cal. Ct. App. 2024) ..................................................9, 10

*Villacres v. ABM Indus. Inc.*,
　189 Cal. App. 4th 562 (Cal. Ct. App. 2010) ...............................................5, 8, 9

*Ward Gen. Ins. Servs., Inc. v. Emps. Fire Ins. Co.*,
　114 Cal. App. 4th 548 (Cal. Ct. App. 2003), *as modified on denial of reh'g*
　(Cal. Ct. App. Jan. 7, 2004) ...............................................................................9

*Winet v. Price*,
　4 Cal.App.4th 1159 (Cal. Ct. App. 1992) ..........................................................10

*Yost-Rudge v. City of Stuart*,
　2024 WL 1513898 (S.D. Fla. Mar. 18, 2024), *report and recommendation
　adopted*, 2024 WL 1513894 (S.D. Fla. Apr. 8, 2024) ..........................................4

**Statutes**

Cal. Civ. Code § 1550............................................................................................5

Cal. Civ. Code § 1639..........................................................................................10

Fla. Stat. § 320.696(1)...........................................................................................7

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
　Texts*, at § 19 (2012)............................................................................................8

Fed. R. Civ. P. § 8(a)(2)........................................................................................4

Fed. R. Civ. P. § 12(b)(6).............................................................................1, 3, 4

Local Rule 7.1........................................................................................................1

Defendants Hyundai Motor America ("HMA") and Genesis Motor America ("GMA") (collectively, "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, move the Court for entry of an Order dismissing the Amended Complaint filed by Plaintiff Potamkin HY Palmetto LLC for failure to state a claim, and in support thereof, state as follows.

## **INTRODUCTION**

Plaintiff, a disgruntled former dealer of Hyundai and Genesis vehicles, filed this lawsuit against HMA and GMA as the franchisors for those respective brands. The lawsuits concern Plaintiff's compensation under programs called Hyundai Complimentary Maintenance ("HCM") and Genesis Complimentary Maintenance ("GCM"). Specifically, Plaintiff alleges that it was underpaid for complimentary maintenance performed on Hyundai and Genesis vehicles from 2020 through the time it sold its dealerships in 2023.

Plaintiff's claims face an immediate obstacle apparent on the face of the Complaint. In connection with the sale of Plaintiff's dealerships, the Parties here mutually released all claims relating to Plaintiff's franchises. This release is enforceable and bars Plaintiff's claims against HMA and GMA.

Plaintiff pleads in conclusory fashion that these particular lawsuits are exempt from the release based on a carve-out for "payments and other obligations owed between the parties hereto which pertain to valid warranty claims and work performed by Dealer on Hyundai [or Genesis] Products . . . ." But Plaintiff's argument is an attempt to jam the square peg of its complimentary maintenance claims into the round hole of this limited exception preserving claims for warranty payments. A proper reading of the exception—grounded in its plain language and the applicable principles of contract interpretation—demonstrates that it only preserves claims relating to payments owed for valid *warranty* claims and work. Complimentary maintenance services are not

1

mentioned.   The difference between maintenance and warranty work is apparent from the allegations in the Complaint and the documents on which those allegations rely.

After Defendants filed their motion to dismiss Plaintiff's original complaints, ECF No. 19, Plaintiff elected to file an Amended Complaint instead of responding to the motion.  ECF No. 20. Plaintiff added a single allegation regarding payments that it accepted from HMA and GMA after the release was executed for HCM and GCM services performed prior to execution.  Am. Compl. ¶ 20.  This extrinsic evidence does not change the result, as it is irrelevant and inadmissible to alter contractual language not susceptible to Plaintiff's broad interpretation.

Because the exception does not apply here, the mutual release bars Plaintiff's claims and compels dismissal of the Amended Complaint with prejudice.

## **BACKGROUND**

Defendants HMA and GMA distribute Hyundai and Genesis motor vehicles, respectively, to authorized dealers of each brand in the United States.  Am. Compl. ¶¶ 2–3.  Pursuant to separate dealer agreements with HMA and GMA, Plaintiff Potamkin HY Palmetto LLC operated dealerships in Kendall, Florida, for the sale and service of Hyundai and Genesis brand motor vehicles.  Am. Compl. ¶¶ 4–5.  These respective agreements were called the Hyundai Dealer Sales and Service Agreement ("Hyundai Dealer Agreement"), *see* Am. Compl. ¶ 4, and the Genesis Dealer Sales and Service Agreement ("Genesis Dealer Agreement"), *see* Am. Compl. ¶ 5, (collectively, the "Dealer Agreements").

In or around March 14, 2023, the Parties terminated the Dealer Agreements when Plaintiff sold its Hyundai and Genesis dealerships to a third party.  Am. Compl. ¶¶ 6–7.  The Parties also entered into individual Mutual Release Agreements.  Am. Compl. ¶¶ 6–7.  The Mutual Release Agreements state that the Parties' "desire to release each other from *all obligations, claims, demands, or causes of action which may have arisen or may ever arise* in connection with the sale

and service of Hyundai Products, including, without limitation, the Dealer Agreement." Ex. 1 to Decl. of Ryan L. Ford at 1 (emphasis added); *see also* Ex. 2 to Decl. of Ryan L. Ford at 2 (identical language as to GMA).[1]

Consistent with the Parties' express desire to release each other from all claims, § 1 of the Mutual Release Agreements provides:

> To the fullest extent permitted by applicable law, Dealer and HMA . . . release, acquit, and forever discharge each other of and from all claims which have arisen or may ever arise, and demands and causes of action arising from, or relating to, by reason of any or all matters relating in any way to the Dealer Agreement or the relationship created thereunder or the termination thereof, the operation of the business of Dealer, or any acts or omissions relating in any way to the sale of Hyundai Products, and from any and all claims for damages, related to or in any manner connected with the foregoing.

Ex. 1 at § 1; *see also* Ex. 2 at § 1 (identical language as to GMA).  The Mutual Release Agreements specifically carve out from this broad release a handful of enumerated exceptions.  *See* Ex. 1 at § 2; Ex. 2 at § 2; *see also* Am. Compl. ¶ 8–9.  Specifically, § 2 provides in relevant part:

> Notwithstanding anything in this Mutual Release Agreement, Dealer and HMA expressly agree that the mutual releases herein shall not include any claims related to (a) payments and other obligations owed between the parties hereto which pertain to valid warranty claims and work performed by Dealer on Hyundai Products . . . .

Ex. 1 at § 2(a); *see also* Ex. 2 at § 2(a) (same as to GMA).  Section 2 also lists additional exceptions under subsections (b)–(e).  Ex. 1 at 1–2; Ex. 2 at 1–2.  None of the Mutual Release Agreements' enumerated exceptions mention the term "maintenance."  *See* Ex. 1 at § 2; Ex. 2 at § 2.

---

[1]    A court resolving a motion to dismiss under Rule 12(b)(6) "may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."  *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (holding documents were properly considered).  Here, the Amended Complaint relies on and incorporate by reference the Parties' Mutual Release Agreements, as Plaintiff's claims purport to invoke Plaintiff's rights under the Mutual Release Agreements, *see* Am. Compl. ¶¶ 6–10.  These documents thus are properly considered by the Court on a motion to dismiss.

Plaintiff filed its Amended Complaint against HMA and GMA, asserting two claims against each Defendant arising from payments related to HCM and GCM.  Am. Compl. ¶¶ 14–45. Under these plans, anyone who purchases a new Hyundai or Genesis vehicle can obtain certain basic maintenance services free of charge from any authorized dealer for the first three years or 36,000 miles.  Am. Compl. ¶¶ 15–16.  Plaintiff alleges that Defendants reimbursed Plaintiff for maintenance it provided under HCM and GCM, but contends that it was entitled under Florida law to charge Defendants a higher labor rate and parts mark-up for this work.  Am. Compl. ¶ 19.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Labels, conclusions, blanket assertions, and recitations of a claim's legal elements are not "facts," and courts do not accept them as true for purposes of a motion to dismiss.  *Id.* at 678–79; *see also* Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), dismissal is appropriate where, as here, the claims are subject to an applicable release agreement.  *See Bulford v. Verizon Bus. Network Servs., Inc.*, 564 F. App'x 449, 452 (11th Cir. 2014) (affirming dismissal under Rule 12(b)(6) based on the plain language of a general release that "barred [the plaintiff's] remaining claims"); *Marder v. Lopez*, 450 F.3d 445, 543 (9th Cir. 2006) (same).  Courts in this district recently have applied this rule when dismissing claims subject to an existing release agreement.  *See, e.g.*, *Yost-Rudge v. City of Stuart*, 2024 WL 1513898, at *5 (S.D. Fla. Mar. 18, 2024), *report and recommendation adopted*, 2024 WL 1513894 (S.D. Fla. Apr. 8, 2024).

I.     **Plaintiff Voluntarily Released "All Claims" Relating to its Hyundai and Genesis Dealerships.**

The Mutual Release Agreements are enforceable.  Under California law, which applies here under the choice-of-law provision in the agreements,[2] a valid contract requires: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration[.]"  Cal. Civ. Code § 1550.  None of these elements are in question here, as Plaintiff concedes that the Mutual Release Agreements are valid.  *See, e.g.*, Am. Compl. ¶¶ 6–10 (alleging that the Mutual Release Agreements entitle Plaintiff to certain things).

"In general, a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence."  *Marder*, 450 F.3d at 449 (quoting *Skrbina v. Fleming Cos.*, 45 Cal. App. 4th 1353 (Cal. Ct. App. 1996)).  Courts must construe releases "so as to give effect to the parties' mutual intent as it existed when they contracted," which "should be inferred from the language of the Release, so long as that language is not ambiguous or uncertain."  *Id.*  General releases covering "all claims" "are not to be shorn of their efficiency by any narrow, technical, and close construction."  *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 589 (Cal. Ct. App. 2010).  "To be effective, a release need not achieve perfection[.]"  *Skrbina v*, 45 Cal. App. 4th at 1353.

---

[2]     The Mutual Release Agreements provide that California law governs "[a]ll matters arising out of or relating to" the agreements.  Ex. 1 at 3 (§ 6); *see also* Ex. 2 at 3 (§ 6) (same).  Under Florida law, this contractual choice-of-law provision must be enforced unless it contravenes the public policy of Florida.  *See Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*, 673 F.2d 1234, 1238 (11th Cir. 1982), *opinion modified on reh'g sub nom. Coral Gables Imported Motorcars v. Fiat Motors of N. Am., Inc.*, 680 F.2d 105 (11th Cir. 1982).  California law concerning the scope and effect of contractual releases does not contravene any articulated Florida public policy.  *See id.* (explaining that "the laws concerning the construction of a general release are more or less uniform among the states").  Yet even if Florida law applied, it would produce the same results here.  *See infra* at nn. 5 & 7.

Here, the parties mutually agreed to release a broad swath of claims touching any aspect of their business relationship. *See* Ex. 1 at § 1 (releasing "all claims . . . demands and causes of action arising from, or related to, by reasons of any or all matters relating in any way to the Dealer Agreement or the relationship created thereunder . . . , the operation of the business of Dealer, or any acts or omissions relating in any way to the sale of Hyundai products"); Ex. 2 at § 1 (same as to GMA). The claims that Plaintiff now asserts—regarding compensation for complimentary maintenance that Plaintiff provided to Hyundai and Genesis customers—fall within the heart of this release. Am. Compl. ¶¶ 15–16, 25, 27–28, 37, 39–40. Maintenance work indisputably "relates" to Plaintiff's business operations and "arises from" Plaintiff's franchise relationship with Defendants. Am. Compl. ¶¶ 18–27, 34–39 (alleging facts regarding payments between the Parties related to maintenance plan labor and parts). Moreover, Plaintiff alleges a breach of both Dealer Agreements—a claim that, by definition, "arises from" those Dealer Agreements. *See* Am. Compl. ¶¶ 29–33, 41–45.

## II.     No Exception Preserves Plaintiff's Complimentary Maintenance Claims.

Recognizing that the broad release would otherwise bar its claims, Plaintiff attempts to invoke an exception to the release. *See* Am. Compl. ¶¶ 8–10. But no exception applies here.[3]

In particular, Plaintiff relies on § 2(a)'s exception for disputes related to valid warranty claims and work. *See* Am. Compl. ¶¶ 8–10. The plain language of this exception preserves claims relating to "payments and other obligations owed between the parties hereto which pertain to valid *warranty* claims and work performed by Dealer on Hyundai's Products." Ex. 1 at § 2(a) (emphasis added); Ex. 2 at § 2(a) (same as to GMA). Essentially, Plaintiff retained its right to collect

---

[3]     The exceptions under §§ 2(b)–(e) are not even in the ballpark. Plaintiff's claims do not relate to: Plaintiff's parts account, specified post-termination repurchase credits and obligations, marketing and advertising payments, or defense and indemnification. Plaintiff only contends that its claims fall with the warranty exception under § 2(a). Am. Compl. ¶¶ 8–10.

payments owed for (1) valid warranty reimbursement claims already submitted to Defendants and (2) valid warranty work already performed on Hyundai and Genesis vehicles, for which Plaintiff had not yet submitted a reimbursement claim.

### A. Plaintiff's Claims Relate to Complimentary Maintenance, Not Warranty Service.

Plaintiff's claims regarding Defendants' complimentary maintenance programs do not fit within the narrow scope of the warranty exception.  This lawsuit has nothing to do with warranty claims or warranty work.   Rather, Plaintiff disputes the reimbursement rate for "maintenance plan[s]."  *See, e.g.*, Am. Compl. ¶¶ 14–21, 24, 26–28, 36, 38–40.  As the name implies, a maintenance plan is not a warranty and instead "covers certain maintenance services[,]" such as oil changes and tire rotations.  Am. Compl. ¶¶ 14–16.  Nowhere does Plaintiff allege that the routine maintenance it performed under HCM and GCM was covered by a Hyundai or Genesis warranty.  Instead, Plaintiff argues that Defendants should pay full warranty labor rates for other, unrelated maintenance services.

Plaintiff's own pleadings recognize the distinction between warranty and other compensable services.  First, Plaintiff cites provisions of the Dealer Agreements obligating Defendants to provide reimbursement for both "warranty work" and "policy work" in accordance with applicable law.  Am. Compl. ¶ 13.  Since Plaintiff is not seeking reimbursement for warranty work, this allegation implies that Plaintiff's contract claim for maintenance reimbursement is premised on something else—unrelated "policy work."  Second, the statute Plaintiff sues under expressly distinguishes between a warranty and a maintenance plan.  *See* Am. Compl. ¶¶ 24, 36 (alleging statutory requirements applicable to "'a warranty **or** maintenance plan'" (quoting § 320.696(1), Fla. Stat.)) (emphasis added).  If a warranty and a maintenance plan were synonymous, the Florida legislature would have no need to list both terms in § 320.696(1).  *See*

*United States v. Miles*, 75 F.4th 1213, 1223 (11th Cir. 2023) (explaining that the "surplusage canon counsels us to avoid an interpretation that makes another part of the statutory text needlessly superfluous" and holding that the surplusage canon requires the court to read statutory provision "narrowly" to avoid "creating superfluity" (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at 174 (2012))).

      **B.**    **Section 2(a)'s Exception Does not Extend to Claims Regarding Maintenance Programs.**

Plaintiff cannot expand the scope of § 2(a)'s exception beyond the warranty context to include its maintenance plan claims. The plain language of § 2 requires that the exception be read narrowly. *See Crosby v. HLC Properties, Ltd.*, 223 Cal. App. 4th 597, 604 (Cal. Ct. App. 2014) (holding that the exception to a general release of all claims "must be read narrowly in light of the agreement's broad release" and so not to "vitiate the express provisions of the release").[4] Section 2(a) features *neither* the term "maintenance plan" *nor* the word "maintenance" *nor* either of the specific names of the maintenance plans at issue. *See* Ex. 1 at § 2; Ex. 2 at § 2. When Plaintiff executed the release in March 2023, the HCM and GCM programs had already existed for years. *See* Am. Compl. ¶ 16 (conceding Hyundai maintenance plans began in 2020); Am. Compl. ¶ 14 (conceding Genesis maintenance plans began in 2016). Plaintiff knew about its claims related to these programs, and if it had intended to reserve them, the Parties could have "fashion[ed] language memorializing their agreement to preserve" such "claims from the operation

---

[4]     Florida law likewise would require this narrow reading § 2's exceptions. *See Pettway v. Amazon Fulfillment Ctr.*, 2024 WL 5090194, at *3 (M.D. Fla. Dec. 12, 2024) (rejecting the plaintiff's construction of release agreement as "not reasonable" and holding that Florida law required narrowly reading purported exception to the release to avoid an interpretation "inconsistent with the broad releases and waivers contained in the Agreement" where such an interpretation would "contravene the Parties' stated intent to enter into an agreement to" release, with a specified exception, any claims arising from their relationship).

of the release[.]" *See Villacres*, 189 Cal. App. 4th at 589.  The Parties evidently knew how, given § 2's list of enumerated exceptions.  Their decision not to do so forecloses any unstated exceptions.

Plaintiff's expansive view of § 2(a) should also be rejected for based on two basic tenets of contract interpretation.  First, it requires the Court to "depart from [a] basic principle of English usage"—sometimes called the Series-Qualifier Canon. [5]  *Love & War, LLC v. Wild Bunch A.G.*, 2020 WL 3213831, at *5 (C.D. Cal. Mar. 19, 2020).  Under this "accepted rule of English syntax," an initial modifier "modifies each term in the list unless a different modifier appears."  *Id.* (rejecting the plaintiff's proposed contract interpretation that would "depart from this basic principle"); *see also Ward Gen. Ins. Servs., Inc. v. Emps. Fire Ins. Co.*, 114 Cal. App. 4th 548, 554 (Cal. Ct. App. 2003), *as modified on denial of reh'g* (Cal. Ct. App. Jan. 7, 2004) ("Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears.").[6]  Applying the Series-Qualifier Canon to § 2(a), the adjective "warranty" in the phrase "warranty claims and work performed by Dealer on Hyundai Products" modifies both "claims" and "work."  This rule thus precludes Plaintiff's attempt to expand the scope of the exception by considering words in isolation and stripping the phrase "work performed by Dealer on Hyundai [or Genesis] Products" from its warranty context.

Second, Plaintiff's reading of §2(a) would render one of the terms meaningless, which is "strongly discouraged under California law."  *Seoul Semiconductor Co., Ltd. v. Finelite, Inc.*, 694 F. Supp. 3d 1199, 1210 (N.D. Cal. 2023).  California courts give effect to every provision of a contract and will "avoid an interpretation that leaves part of a contract as surplusage."  *VFLA*

---

[5]     *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at § 19 (2012) (explaining the "Series-Qualifier Canon").

[6]     Florida courts likewise apply the Series-Qualifier Canon.  *See, e.g.*, *Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC*, 278 So.3d 857, 861–62 (Fla. 3d DCA 2019) (applying "the series-qualifier canon" to contract provision (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 19, at 147–51 (2012))).

*Eventco, LLC v. William Morris Endeavor Ent., LLC* 100 Cal. App. 5th 287, 297 (Cal. Ct. App. 2024) (internal quotations omitted); *see also Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019).[7] Here, Plaintiff interprets the term "work" in the phrase "valid warranty claims and work performed by Dealer on Hyundai [or Genesis] Products" to include non-warranty maintenance work. Under that view, the term "warranty" would be superfluous because the exception for "work" would cover *all* valid work performed on Hyundai or Genesis products, including warranty work. Defendants' interpretation, on the other hand, would give meaning to the word "warranty" as a modifier for both "claims" and "work." In light of the surplusage it would create, Plaintiff's interpretation must be avoided.

### C.    Plaintiff's Allegations of Extrinsic Evidence Post-Execution Are Irrelevant.

After Defendants filed a motion to dismiss, Plaintiff attempted to salvage its broad interpretation of § 2(a)'s warranty exception by amending its Complaint to allege that Plaintiff accepted payments from HMA and GMA after execution of the agreement for work performed under HCM and GCM prior to the execution of the agreement. Am. Compl. ¶ 20. But this extrinsic evidence cannot save Plaintiff's unreasonable interpretation of the plain language of the release.

California law provides that "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. Extrinsic evidence is "admissible only to prove a meaning to which the language is reasonably susceptible, not to flatly contradict the express terms of the agreement." *Winet v. Price*, 4 Cal. App. 4th 1159, 1167 (Cal. Ct. App. 1992); *see also In re Tobacco Cases I*, 186 Cal. App. 4th 42, 52 (Cal. Ct. App.

---

[7]    Florida law follows the same principle of contract interpretation. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) ("We must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage 'if any meaning, reasonable and consistent with other parts, can be given to it.'") (quoting *Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. 2d DCA 2006)).

2010) (rejecting extrinsic evidence of the parties' course of performance because the pertinent language was not susceptible to the interpretation that evidence would have supported).[8]

Here, the written language of § 2(a) is not "reasonably susceptible" to Plaintiff's interpretation.  As discussed above, that reading finds no support in the plain meaning of the terms, violates the series modifier canon, and renders the word "warranty" superfluous.  *See Supra,* Section II.B.  This precludes consideration of any extrinsic allegations of post-execution payments to support Plaintiff's interpretation.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully requests that the Court grant Defendants' Motion and dismiss all claims in the Amended Complaint with prejudice.

Dated: May 2, 2025                    Respectfully submitted,


                                      */s/ Hans H. Hertell*
                                      Hans H. Hertell
                                      Florida Bar No. 71969
                                      HOGAN LOVELLS US LLP
                                      600 Brickell Ave., Suite 2700
                                      Miami, FL 33131
                                      Tel: (305) 459-6500
                                      Fax: (305) 459-6550
                                      hans.hertell@hoganlovells.com

---

[8] Florida law on the use of extrinsic evidence in contract interpretation is even more stringent. Florida courts only consider extrinsic evidence if a contract is ambiguous.  *Contragolpe LLC v. 505 NE 30 Street, LLC*, 403 So.3d 358, 361 (Fla. 3d DCA 2025).  Even then, where a patent ambiguity exists, extrinsic evidence is only allowed for a limited purpose: "to clarify issues regarding the identity, capacity, or the parties' relationship with one another."  *Id*. (reversing trial court's resolution of contractual ambiguity because it improperly relied on extrinsic evidence).

Ryan L. Ford (*Pro Hac Vice*)
Kevin D'Olivo (*Pro Hac Vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5866
Fax: (202) 637-5910
ryan.ford@hoganlovells.com
kevin.dolivo@hoganlovells.com

*Counsel for Defendants Hyundai Motor America
and Genesis Motor America*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Service of this filing will be made on all ECF-registered counsel/parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*/s/ Hans H. Hertell*</u>
Hans H. Hertell
Florida Bar No. 71969
HOGAN LOVELLS US LLP
600 Brickell Ave., Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Fax: (305) 459-6550
hans.hertell@hoganlovells.com

*Counsel for Defendants Hyundai Motor America and Genesis Motor America*