UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 25-20538-CIV-MARTINEZ

POTAMKIN HY PALMETTO, LLC
d/b/a KENDALL HYUNDAI,

          Plaintiff,

v.

HYUNDAI MOTOR AMERICA
CORPORATION,

          Defendant.
_____/

POTAMKIN HY PALMETTO, LLC
d/b/a KENDALL GENESIS,

          Plaintiff,

v.

GENESIS MOTOR AMERICA, LLC,

          Defendant.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before this Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Motion"), (ECF No. 26). This Court has reviewed the Motion, Plaintiff's Response, (ECF No. 27), Defendants' Reply, (ECF No. 28), relevant law, and is otherwise fully advised. After careful consideration, and for the reasons set forth herein, Defendants' Motion, (ECF No. 26), is **GRANTED**.

I.  **BRIEF FACTUAL BACKGROUND**

Plaintiff, Potamkin HY Palmetto, LLC ("Dealer"), was a motor vehicle dealer. (Am. Compl. ¶ 1, ECF No. 20.) Defendants Hyundai Motor America Corporation ("HMA") and Genesis Motor America ("GMA") (collectively, "Defendants") are distributors of Hyundai and Genesis Brand motor vehicles. (Am. Compl. ¶¶ 2–3.) Plaintiff operated a dealership in Kendall, Florida for the sale and services of Hyundai and Genesis motor vehicles, pursuant to dealer agreements with HMA and GMA ("Dealer Agreements"). (Am. Compl. ¶¶ 4–5.) In 2016, HMA began providing a complimentary maintenance plan with each purchase of a new Genesis vehicle. (Am. Compl. ¶ 14.) When GMA became the distributor of Genesis vehicles, it continued to include this plan. (Am. Compl. ¶ 15.) On February 1, 2020, HMA began providing the complimentary maintenance plan with each purchase of a new Hyundai vehicle. (Am. Compl. ¶ 16.)

On March 14, 2023, the parties terminated their Dealer Agreements when Plaintiff sold the dealership, and the parties entered into individual Mutual Release Agreements the following day ("Release Agreements"). (Am. Compl. ¶¶ 6–7.) In the Release Agreements, the parties released "each other of and from all claims which have arisen or may ever arise . . . relating in any way to the Dealer Agreement or the relationship created thereunder . . . or any acts or omissions relating in any way to the sale of Hyundai Products . . . ." (ECF No. 26-2 § 1; ECF No. 26-3 § 1 (identical language as to Genesis Products).)[1]

---

[1] The Court may consider the Release Agreements without requiring conversion of the motion to dismiss into a motion for summary judgment because Plaintiff refers to the Release Agreements in its Amended Complaint and the Agreements are central to Plaintiff's claims. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Steinberg v. Alpha Fifth Grp.*, No. 04-60899-CIV, 2008 WL 906270, at *2–4 (S.D. Fla. Mar. 31, 2008) (considering release agreement at the motion to dismiss stage without converting into motion for summary judgment).

Section 2 of the Release Agreements provides:

> Notwithstanding anything in this Mutual Release Agreement, Dealer and HMA expressly agree that the mutual releases herein shall not include any claims relating to (a) payments and other obligations owed between the parties hereto which pertain to valid warranty claims and work performed by Dealer on Hyundai Products . . . .

(ECF No. 26-2 § 2; ECF No. 26-3 § 2 (identical language as to GMA and Genesis Products).)

Plaintiff filed its Amended Complaint against Defendants, (ECF No. 20), alleging that Defendants reimbursed Plaintiff for labor performed and parts used pursuant to the complimentary maintenance plans at rates substantially below the established statutory reimbursement rates.

## II. LEGAL STANDARD

The Court may dismiss a complaint based on the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss, the Court must accept a complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, pleadings are construed broadly so that all reasonable inferences are viewed in the light most favorable to the plaintiffs. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). The pleading standard requires more than a "recitation of the elements of a cause of action," and the facts alleged must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Legal conclusions masquerading as facts are not entitled to an assumption of truth and will not prevent dismissal. *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. DISCUSSION

The parties dispute the scope of Section 2(a) of the Release Agreements, which states that claims regarding "valid warranty claims and work performed by Dealer" on Hyundai and Genesis

products are not released. (ECF No. 26-2; ECF No. 26-3.) Plaintiff proposes reading Section 2(a) as encompassing (1) valid warranty claims and (2) all other valid work performed by Dealer on Hyundai and Genesis products in an effort to bring claims related to maintenance plans against Defendants. (ECF No. 27.) Defendants contend Section 2(a) encompasses only (1) valid warranty claims and (2) valid warranty work performed by Dealer on Hyundai and Genesis products. (ECF No. 26.) The Court agrees with Defendants.

### A. Section 2(a) of the Release Agreements is unambiguous.

When interpreting a contract, the plain language governs as long as the language is clear, explicit, and without any absurdities. Cal. Civ. Code § 1638.[2] If possible, a court must ascertain the mutual intent of the parties solely from the written contract. Cal. Civ. Code § 1639. A contract term is unambiguous when it is not reasonably susceptible of more than one interpretation. *See In re Tobacco Cases I*, 186 Cal. App. 4th 42, 48 (2010). Here, Section 2(a) of the Release Agreements is clear and unambiguous on its face. The provision preserves claims relating to only (1) valid warranty claims and (2) valid warranty work performed by Dealer on Hyundai and Genesis products. There is no reasonable reading under which maintenance plans fall within Section 2(a).

### B. The canons of construction support Defendants' interpretation of Section 2(a).

Courts often apply the canons of construction when interpreting contract language. *See Ward Gen. Ins. Servs., Inc. v. Emps. Fire Ins. Co.*, 114 Cal. App. 4th 548, 554 (2003), *as modified on denial of reh'g* (Jan. 7, 2004); *see also ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 113 F.4th 1312, 1321–25 (11th Cir. 2024). The series-qualifier canon instructs that, "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or

---

[2] The Release Agreements provide that California law governs "[a]ll matters arising out of or relating to" the agreements. (ECF No. 26-2 § 6; ECF No. 26-3 § 6.) Therefore, this Court relies on California law to interpret the Release Agreements.

4

postpositive modifier normally applies to the entire series." *U.S. Wholesale Outlet & Distrib., Inc. v. Living Essentials, LLC*, No. CV 18-1077 CBM, 2021 WL 3598726, at *6 (C.D. Cal. Apr. 20, 2021) (quoting *Series-Qualifier Canon*, BLACK'S LAW DICTIONARY (11th ed. 2019)). The *Ward* court applied the series-qualifier canon to language in an insurance policy, and held that, in the phrase "direct physical loss of or damage to Covered Property," the words "direct physical" function as prepositive modifiers of both "loss of" and "damage to." 114 Cal. App. 4th at 554. When applying the series-qualifier canon to Section 2(a) of the Release Agreements here, the words "valid warranty" function as prepositive modifiers of "claims" and "work," meaning that Section 2(a) covers "valid warranty claims" and "valid warranty work" and does not encompass maintenance plans.

The surplusage canon states that courts must avoid construing a contract in a way that renders any word redundant or mere surplusage. *Tobacco*, 186 Cal. App. 4th at 49; *VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*, 100 Cal. App. 5th 287, 299–301 (2024) (rejecting appellant's interpretation in part because it treated one sentence as surplusage). Plaintiff's proposed interpretation of Section 2(a) would render the term "warranty" superfluous, as "valid work" would necessarily encompass warranty work. The Court does not find merit in Plaintiff's contention that Defendant's interpretation creates surplusage, (ECF No. 27 at 6), as Defendants reasonably distinguish "valid warranty claims" from "valid warranty work performed" by interpreting them to mean (1) valid warranty reimbursement claims already submitted and (2) valid warranty work performed but not yet submitted for reimbursement, (ECF No. 26 at 6–7).

C. **Extrinsic evidence does not render the contract language "reasonably susceptible" to Plaintiff's interpretation.**

This Court must provisionally receive, without admitting, all credible evidence regarding the parties' intentions to determine whether the contract language is "reasonably susceptible" to

Plaintiff's interpretation of the Release Agreements. *W. Pueblo Partners, LLC v. Stone Brewing Co.*, 90 Cal. App. 5th 1179, 1186 (2023). If the extrinsic evidence demonstrates that the language is "reasonably susceptible" to Plaintiff's interpretation, the evidence is then admitted to aid in interpreting the contract language. *Id.*

Plaintiff argues that Defendants' payments to Plaintiff post-execution of the Release Agreements for work performed under Defendants' maintenance plans support Plaintiff's interpretation of the Release Agreements. (ECF No. 27 at 6–7.) However, this extrinsic evidence does not change the conclusion that Section 2(a) is unambiguous. *See W. Pueblo*, 90 Cal. App. 5th at 1190. A few post-execution payments do not support Plaintiff's view that the parties intended to preserve Plaintiff's claims challenging the maintenance plans' reimbursement rates since the plans' inception. Thus, the extrinsic evidence of post-execution payments does not render Section 2(a)'s language reasonably susceptible to Plaintiff's interpretation. As all Plaintiff's claims relate to Defendants' maintenance plans, all are barred by the parties' Release Agreements. (*See* Am. Compl. ¶¶ 22–45.)

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss, (ECF No. 26), is **GRANTED**.
2. Plaintiff's Amended Complaint, (ECF No. 20), is **DISMISSED with prejudice**.
3. This case is **CLOSED**, and all pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21 day of July, 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record